HOGAN v. HUDSON.

1. CHATTEL MORTGAGES—DEFAULT — FORECLOSURE FOR WHOLE
   AMOUNT—RIGHTS OF UNSECURED CREDITORS.
   A mortgagee whose lien secures the payment of several
   notes to become due at different times, and which is the only
   lien upon the property, may, with the consent of the mort-
   gagor, as against his creditors, foreclose for the whole amount,
   on default in payment of the note which first becomes due.

2. SAME—SALE IN BULK—VALIDITY.
   Such proceedings are not invalidated as to other creditors
   of the mortgagor by the fact that, with his consent, the
   property is sold in bulk instead of in parcels, where the mort-
   gage does not designate the manner of sale, and the sale is so
   made in good faith, with the intention of procuring the high-
   est price obtainable.

Error to Wayne; Carpenter, J. Submitted June 17,
1896. Decided June 30, 1896.

Garnishment proceedings by Walter G. Hogan against
Joseph L. Hudson, as garnishee of Joseph L. Gearing.
From a judgment for the garnishee defendant on verdict
directed by the court, plaintiff brings error. Affirmed.

The principal defendant, Gearing, was a building con-
tractor, carrying on business in the city of Detroit. He
owned some buildings situated upon leased ground, which
he occupied as a plant for carrying on his business, and
in which he had the usual machinery and tools. On
October 14, 1895, he was indebted to the garnishee de-
fendant, Hudson, in the sum of $2,000, for money loaned.
At the same time Mr. Hudson was an indorser for Mr.
Gearing on a promissory note for $4,500, due November
11, 1895. One C. McElroy was an indorser for Gearing
on three notes,—one for $2,600, one for $1,800, and one

for $2,000,—due, respectively, on October 21, November 12, and November 14, 1895. To secure Mr. Hudson and Mr. McElroy, Mr. Gearing executed a chattel mortgage on the buildings, machinery, stock, goods, and material used in connection with his business, and his book accounts. The $2,000 loaned by Mr. Hudson, and also two other small debts secured by the mortgage, were paid. Default was made in the payment of the $2,600 note, due October 21st, and thereupon, and before the other notes became due, Mr. Hudson took possession of the property under the chattel mortgage, and advertised it for sale on October 29th. October 28th, Mr. Gearing wrote a letter to Mr. Hudson, saying:

"I think it best for all parties that the entire property as inventoried, together with book accounts, be sold as one parcel, and that the proceeds be used for the payment of the claims secured, whether matured or not."

The property was accordingly sold in bulk, and was bid in by Hudson and McElroy for the sum of $11,000, the total amount of their liability; Hudson buying an undivided 46-110 part, and McElroy an undivided 64-110 part. Soon after the sale, Mr. Gearing obtained from Hudson and McElroy an option to purchase the same for the sum of $12,000, and immediately sent out notice to his other creditors, reciting the fact of the giving of the mortgage, the foreclosure of the same, and an offer to turn over the property upon which he had secured the option to the creditors, or such of them as might wish to take it, provided they would answer the proposition by November 4, 1895, the time at which his option expired. A meeting of the creditors was had on that day, but, as all were not present, an adjournment was had for a week, and an extension of the option secured for that time. Meanwhile, and upon November 6th, the plaintiff instituted this suit. The court directed a verdict for the defendant.

*Bowen, Douglas & Whiting,* for appellant.

*Gray & Gray,* for appellee.

GRANT, J. (*after stating the facts.*)   The validity of the sale was attacked for three reasons:

(1) Because there was a fraudulent collusion between Mr. Hudson and Mr. Gearing.

(2) Because default in the payment of one note did not authorize a sale, and no foreclosure could be had until there was default in all the notes.

(3) Because the sale was in bulk, and not in parcels.

The mortgage was conceded to be valid, and the indebtedness secured thereby to be *bona fide*.   Subsequently to the sale, McElroy sold and conveyed his interest in the property to the Delta Lumber Company; and the Delta Lumber Company and Mr. Hudson, after the failure of the creditors to accept the proposition of Mr. Gearing, sold and transferred the property to Julia Gearing, the wife of Mr. Gearing.   Upon the theory that the sale was void, the plaintiff seeks to hold Mr. Hudson liable for the value of the property, and without payment, tender, or offer to pay the indebtedness secured by the mortgage.

1. The record contains no evidence to show any fraud on the part of Mr. Gearing or Mr. Hudson, or any collusion between them for the purpose of defrauding Mr. Gearing's other creditors.   The sale was open, the proper notice given, and there was no other alternative left to Mr. Hudson and Mr. McElroy than to bid the property in, there being no other bidders.   There was no effort to conceal anything from the unsecured creditors.   Had they secured liens upon the property by attachments or otherwise, the law would have compelled them to pay the indebtedness secured by the mortgage.   By the action of Mr. Hudson and Mr. Gearing they were given this opportunity after the sale.

2. The second point is not tenable.   There was default in the payment of one of the notes.   The mortgage provided that—

"If said Gearing shall pay the promissory notes according to the tenor of said promissory notes, then the mortgage shall be void and of no effect, but, if lefault

shall be made in such payment, said Hudson is hereby authorized to, and shall, sell at public auction."

No other lien then existed, and Mr. Gearing, the only party who then had any voice in the matter, recognized the right to foreclose, and assented to it. The other notes would have become due in a few days, and it was entirely competent for him to assent to a foreclosure, and that at that sale the other notes might be considered as due, and be included in the sale. Those who had no liens are not in position to attack the sale upon this ground.

3. What has already been said applies to the sale in bulk. The mortgagor and mortgagee considered it for the interests of all concerned that the property be sold in bulk. Gearing had the right to so assent. They were the only parties who had the right to speak, and, so long as they acted in good faith, others cannot complain. The mortgage did not provide for sale in parcels, and, in the absence of such provision, it is the duty of the mortgagee to sell in such lots as will command the highest price. *Perkins* v. *Spaulding*, 2 Mich. 157.

We find no error, and the judgment is affirmed.

The other Justices concurred.